IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

KEVIN L. FERRELL,

        Plaintiff,

v.                                              Civil Action No. 3:10-CV-857-JAG

HARRIS VENTURES, INC.,
*trading as* The Staff Zone,

        Defendant.

## MEMORANDUM OPINION

In this case, the plaintiff contends that his former employer fired him in retaliation for his reporting alleged sexual harassment of fellow employees. Based on this contention, he has brought suit under Title VII, 42 U.S.C. §§ 2000e, *et seq.*, which expressly forbids retaliation against employees who oppose discrimination, including sexual harassment. 42 U.S.C. § 2000e-3(a).

The defendant has filed a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Because the record presents disputed issues of material facts, the Court denies the motion.

### I. Facts[1]

The defendant, Harris Ventures, Inc., trading as The Staff Zone ("Staff Zone"), supplies temporary employees to businesses. The plaintiff, Kevin L. Ferrell, worked for Staff Zone as a

---

[1] Following well-established precedent, "the Court views the facts in a light most favorable to the non-moving party," in this case, the plaintiff. *Matarese v. Archstone Pentagon City*, 761 F. Supp. 2d 346, 357 (E.D. Va. 2011).

van driver. He delivered Staff Zone's temporary employees to Staff Zone's customers. Among those customers was Martin Brother's Construction ("Martin").

In January, 2009, Ferrell reported to Heather Woodard, a Staff Zone manager, that he suspected that a supervisor at Martin, Paul Willett, was engaging in inappropriate sexual conduct with Staff Zone employees. Ferrell brought the allegations to the attention of management three times, on January 8, January 19, and January 21, 2009. Ferrell says that Woodward ignored his first proffer of information, and also told him that Willett was just joking. Ferrell offered to document his information, but Woodward told him it was none of his business, that he should mind his own business, and that she would handle it as she saw fit. On January 23, immediately on the heels of Ferrell's last report of sexual harassment, Staff Zone fired Ferrell.

Specifically, Ferrell told Woodward that he had learned that Willett had patted one of the Staff Zone employees on the backside, had placed a long object in his pants pocket and asked the employees if they wanted to touch it, and had "propositioned" two Staff Zone workers. Ferrell also told Woodward that Willett had put his hands up Staff Zone employee Betty Cochran's shirt in the vicinity of her breasts, that Cochran received preferential treatment from Willett, and that Cochran had been taken to Willett's on-site trailer for extended times on several occasions. The implication of the information was that Willett was having sexual relations with Cochran.

Based on these facts, Ferrell argues that Staff Zone fired him in retaliation for reporting the alleged sexual harassment.

Staff Zone's evidence adds complexity to the story. Staff Zone points out that Ferrell did not observe any of the alleged harassment first hand, but rather says that other passengers in his van told him about it. Unfortunately for Ferrell, those passengers simply do not back up his story about what they told him.

In its motion for summary judgment, Staff Zone focuses on Betty Cochran's sexual adventures while working for Staff Zone. First, Cochran admits having an affair with Ferrell in early January, 2009. Cochran was apparently a frolicsome worker, because she confirms that later the same month she had an affair with Willett, the supposed wrong-doer at Martin Construction. Both relationships were entirely consensual. Ferrell only reported the alleged harassment by Willett *after* Willett stole Cochran away from him.

The day after Ferrell's third report of harassment, Woodward interviewed Cochran and learned for the first time of the brief love affair with Ferrell. Cochran also told Staff Zone that Ferrell had continued to try to make unwanted contact with her after she had moved on to Willett. When Woodard learned about the Ferrell-Cochran romance, she immediately discussed the situation with Staff Zone's personnel department. Two days after Ferrell's final report of harassment, Staff Zone decided to fire Ferrell.

In support of its motion for summary judgment, Staff Zone also points to a number of deficiencies in Ferrell's performance:

- He brought a gun to work on many occasions.
- He smoked a cigar in the van.
- He had an accident in the van.
- His driving habits were reviewed and found wanting.
- Three members of the public complained about his driving.

Staff Zone knew about Ferrell's various deficiencies long before firing him.

## II. Standard of Review

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255.

Summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, the mere existence of a scintilla of evidence, or the appearance of some metaphysical doubt concerning a material fact." *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (internal quotation marks and citations omitted). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

### III. Discussion

Staff Zone contends that, applying the *McDonnell Douglas* test to the evidence in this case, the Court must grant summary judgment for the defendant. The Court finds, however, that the record does not warrant summary judgment at this time.

The *McDonnell Douglas* test is a proof scheme used to analyze Title VII cases. Under the test, a plaintiff alleging retaliation must first establish a prima facie case "by showing: (1) that the plaintiff was engaged in protected activity; (2) that the employer acted adversely against

the plaintiff; and (3) that the protected activity was causally connected to the adverse action." *Francisco v. Verizon South, Inc.*, 756 F. Supp. 2d 705, 725 (E.D. Va. 2010) (citing *Laughlin v. Metro. Washington Airports*, 149 F.3d 253, 258 (4th Cir. 1998)). If the plaintiff makes out a prima facie case of discrimination, the burden of production shifts to the employer to state a legitimate non-discriminatory reason for its decision. *Hoyle v. Freightliner, LLC*, No. 09-2024, 2011 WL 1206658, at *11 (4th Cir. Apr. 1, 2011). If the defendant does so, the *McDonnell Douglas* framework disappears and the remaining issue is whether intentional discrimination occurred. "'In other words, the burden shifts back to [the employee] to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (internal citations and internal quotation marks omitted).

Staff Zone argues first that Ferrell has not established a prima facie case, and second, that Ferrell has failed to create a jury issue regarding Staff Zone's proffered reasons for his termination.

### A. Prima Facie Case

Staff Zone's primary ground for seeking summary judgment is that Ferrell did not engage in protected activity. "'Protected activity in a Title VII retaliation case includes opposing discriminatory practices or participating in any manner in a Title VII investigation, proceeding, or hearing.'" *Monk v. Potter*, 723 F. Supp. 2d 860, 879 (E.D. Va. 2010) (quoting *Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, 317 F. App'x 351, 354 (4th Cir. 2009)). In support of its position that Ferrell did not engage in protected activity, Staff Zone attacks Ferrell and his report of the alleged harassment.

Staff Zone first argues that the Court should grant its motion for summary judgment because Ferrell did not actually see the alleged sexual harassment of Cochran and the other employees. Rather, he relied on second or third hand information. Since the basis of his report was hearsay, Staff Zone argues, he had no reason to make the report at all. His report, therefore, was not protected activity, and he cannot establish a prima facie case.

Staff Zone's argument ignores not only the basic principles of Title VII's opposition clause but also the essential nature of sexual harassment. Title VII protects an employee from retaliation when the employee "has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). Recognizing that employees do not approach suspected discrimination with the trained analytical eyes of lawyers, the courts have uniformly held that a reporting employee has room to err. "[O]pposition activity is protected when it responds to an employment practice that the employee *reasonably believes* is unlawful," even if the employer turns out to be innocent of any wrong-doing. *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006) (citations omitted). "Employees are thus guaranteed the right to complain to their superiors about *suspected* violations of Title VII." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543-44 (4th Cir. 2003) (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 650 (4th Cir. 2002)) (emphasis added).

By its very nature, the kind of sexual harassment at issue here typically occurs in private. For the opposition clause to have any meaning in cases involving illicit sexual conduct, it must necessarily allow reports based on hearsay. Title VII only requires a reporting employee to have a reasonable belief that a violation has occurred, not to have absolute certainty. *See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (citations omitted). Here, Ferrell told Staff Zone that he had received several reports of harassing activity. At least one report—

implying that Cochran was sexually involved with Willett—turned out to be true. Based on what Ferrell claims to have heard, he had ample justification to report the harassment to Staff Zone.[2] That he heard it from others, rather than observing it himself, is of no moment. In short, Staff Zone's "hearsay" argument does not entitle it to summary judgment.

Staff Zone, however, offers a second reason why Ferrell has not engaged in protected activity: it says that the Court should discount Ferrell's report. Staff Zone notes that Ferrell himself had an affair with Cochran, and only made his report after she took her affections elsewhere. In essence, Staff Zone asks this Court to decide that Ferrell is a cad who is unworthy of belief. Even a cad is entitled to his day in court, however, and summary judgment is not the appropriate vehicle to test a claimant's believability. *Anderson*, 477 U.S. at 255.

Staff Zone notes that the witnesses who allegedly reported the harassment to Ferrell do not support his recounting of what they supposedly told him. Again, the issue raised by Staff Zone is credibility. The authorities make clear that the Court may not make credibility determinations at the summary judgment stage. *Hoyle*, 2011 WL 1206658, at *8 (citing *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991)). This principle is especially true in cases in which witnesses tell contradictory versions of the same events. As this Court recently held in a patent case: "At the very least, genuine factual issues preclude a grant of summary judgment here, where credibility determinations must be made to determine the proper weight to accord to the 'he said; he said' testimony of [rival inventors], both of whom claim exclusive inventorship of the same invention." *TecSec, Inc. v. Int'l Bus. Machines Corp.*, 763 F. Supp. 2d 800, 813 (E.D. Va. 2011). The instant case presents a "he said; they said" scenario. Whom to believe is a jury

---

[2] Staff Zone does not contest that, if what Ferrell reported is true, his report opposing sexual harassment would be protected activity under Title VII.

question. "Credibility determinations . . . are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

In sum, the plaintiff has offered evidence that he learned about on-going sexual harassment from others and reported the matters to management. If true, Ferrell's version of the events makes a clear prima facie case of protected activity resulting in unlawful retaliation. Summary judgment, therefore, is inappropriate at this time.

### B. Legitimate Reason for Termination

Alternatively, Staff Zone argues that it has proffered legitimate reasons for firing Ferrell, that Ferrell has not shown that those reasons are pretextual, and that the motive for Ferrell's firing does not present an issue for the jury to decide. Although Staff Zone has offered a laundry list of nondiscriminatory reasons for its decision to fire Ferrell, none of the proffered reasons entitle Staff Zone to summary judgment.

Specifically, Staff Zone alleges the following nondiscriminatory reasons for the termination:

- Ferrell brought a gun to work.
- Ferrell was a poor driver.
- Ferrell smoked a cigar in the van.
- Ferrell had a sexual relationship with Cochran.
- Ferrell tried to maintain contact with Cochran after she ended their affair.
- Ferrell mentioned Cochran's name to another worker after he had been told not to discuss her.

Staff Zone argues that these non-discriminatory reasons are unrebutted and therefore entitle it to summary judgment under the *McDonnell Douglas* test.

The first three "reasons" for termination are easily eliminated. Well before the termination, Staff Zone knew that Ferrell carried a gun to work, had a poor driving record, and smoked cigars in the van. Staff Zone put up with Ferrell's peccadillos until he objected to Willett's harassment of women. The timing of the firing allows a jury to find that Staff Zone's first three reasons are pretextual.

The second set of reasons deal with Ferrell's relationship with Cochran. First, Staff Zone says that Ferrell lost his job because of his affair with his co-worker. Ferrell, however, has demonstrated conclusively that his affair with Cochran was consensual. Staff Zone is apparently unconcerned with Cochran's consensual liaison with Willett, and from this, a jury could conclude that her consensual affair with Ferrell is a pretext for retaliation.

Second, Staff Zone maintains that Ferrell's post-affair communications with Cochran amount to harassment, justifying his termination. Ferrell, however, has forecast evidence that Cochran was flirtatious and contacted him after the affair ended.

Third, Staff Zone says that Ferrell's insubordination is a valid reason to fire him. After the affair with Cochran came to light, Woodard directed Ferrell not to discuss Cochran with his co-workers. Almost immediately, someone overheard Ferrell mentioning Cochran's name to a fellow employee. The facts surrounding his mentioning of Cochran's name are sparsely developed. It is unclear the context in which she came up, and whether she was even the real subject of discussion. Moreover, given all that occurred in this case, a jury could easily find that such a minor offense is hardly a legitimate ground for termination.

As a final matter, Staff Zone points to certain admissions made by Ferrell in a conversation with Ferrell's director of human resources. In his statements, Ferrell appears to have agreed with the decision to fire him. Ferrell explains his admissions by saying that he was

just trying to sucker Staff Zone into giving him additional information that he could use as ammunition in a lawsuit against the company. Whether to accept his explanation is a credibility question, inappropriate for summary judgment.

Questions of intent are hard to decide on summary judgment. They are almost always inferential, and best left to the trier of fact who can observe the witnesses and determine whether explanations hold water. "It is readily apparent that determining intent is fact-intensive, and when the circumstantial evidence of a person's intent is ambiguous, the question of intent cannot be resolved on summary judgment." *Gen. Analytics Corp. v. CNA Ins. Cos.*, 86 F.3d 51, 54 (4th Cir. 1996) (citation omitted). A great deal depends on when statements occurred and what their precise content was. This Court has observed that "the timing and content of several conversations is not just material, but potentially dispositive. There is sufficient conflict about interwoven events, and sufficient need for a fact finder to resolve credibility issues, to preclude summary judgment on the retaliation claim." *Atkins v. Computer Scis. Corp.*, 264 F. Supp. 2d 404, 413 (E.D. Va. 2003). Here, Ferrell and Staff Zone tell different stories. Ferrell's alleged misconduct, his report of harassment, and his termination are interwoven, and told in contradictory terms. For this reason, summary judgment is not appropriate.

### IV. Conclusion

The plaintiff faces an uphill battle in this case. A self-confessed scoundrel, he has admitted a number of misdeeds: that he violated a host of work rules, that he had an adulterous relationship with a fellow employee, and that, in a dishonest attempt to wheedle evidence from his employer, he agreed with the decision to fire him. He has further admitted that he only reported sexual harassment of his paramour *after* she dumped him, and that the perpetrator of

harassment was his replacement in Cochran's affections. His fellow employees deny having told him about the events he reported to Staff Zone.

Although Staff Zone paints Ferrell out to be disgraceful, nevertheless Ferrell survives the defendant's motion for summary judgment. The rules of summary judgment require that a jury decide whom to believe. These rules preclude the entry of summary judgment for the defendant. The defendant's motion for summary judgment is therefore DENIED.

The Court will enter an appropriate order.

/s/
John A. Gibney, Jr.
United States District Judge

Date: September 8, 2011
Richmond, VA